Peretz Bronstein (PB-8628)
Edward N. Gewirtz (EG-6801)
**Bronstein, Gewirtz & Grossman, LLC**
60 East 42nd Street, Suite 4600
New York, New York 10165
*Attorney for Plaintiffs,*
*Dollar Phone Corp. and Global Switching, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

| | |
|---|---|
| DOLLAR PHONE CORP. and GLOBAL SWITCHING, INC., individually and on behalf of all those similarly situated, | Civil Action No. 09-3645 (ILG) (SMG) |
| Plaintiffs, | JURY TRIAL DEMANDED |
| -against- | AMENDED CLASS COMPLAINT |
| DUN & BRADSTREET CORPORATION and DUN & BRADSTREET, INC., | |
| Defendants. | |

-------------------------------------------------------------------

Plaintiffs Dollar Phone Corp. and its corporate parent Global Switching, Inc. (collectively "Dollar Phone"), individually and on behalf of the class of all those similarly situated as defined herein, by their undersigned counsel, complaining of the Defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (collectively "D&B"), allege as follows:

## SUMMARY

1.  This action is brought for deceptive trade practices committed by D&B in violation of New York General Business Law Section §349 and substantially similar statutes of other states that prohibit deceptive business practices. D&B engages in

deceptive businesses practices for the purpose of forcing business consumers, such as the named plaintiffs, to purchase unneeded services. D&B in some instances knowingly or recklessly reports to consumers (who purchase reports from D&B) false, harmful information about businesses. The businesses are then forced to pay for services to correct the false, harmful information. In other instances, D&B bills customers for services that the customers did not order. D&B then forces them to pay for these unsolicited services in order to prevent D&B from reporting adverse information about the business consumer. In addition, D&B solicits and sells another service, Score Builder, to business consumers without disclosing important information about its utility, or lack thereof.

## PARTIES

2. Dollar Phone Corp. is a New York corporation with an address at 232 Broadway, Brooklyn, New York 11211.

3. Global Switching, Inc., the parent of Dollar Phone Corp., is a domestic corporation with an address of 232 Broadway, Brooklyn, New York 11211.

4. Upon information and belief Dun & Bradstreet Corporation and Dun & Bradstreet, Inc., are affiliated Delaware corporations based in Short Hills, NJ. Dun & Bradstreet, Inc. is licensed to do business in New York, with a New York address listed at c/o CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least one member of the putative class is a citizen of a State other than that of the citizenship of D&B, there are more than 100 class members, and the damages suffered

and sought to be recovered herein total, in the aggregate, in excess of $5,000,000, exclusive of interest and costs.

6.  At all times material, Defendants have had purposeful and continuous, systematic contacts in or affecting the state of New York.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendants, at all material times, have had continuous and systematic contacts in this district by actively doing business and perpetuating the deceptive business practices that are the subject of this cause of action in New York.

## FACTS

### D&B Forces Dollar Phone to Buy Self Monitor to Have Its Financials Updated

8.  D&B maintains credit reports regarding Dollar Phone. Among the information maintained are Dollar Phone's financial performance figures.

9.  In D&B's credit reports a company is given a score (the "D&B Score"), which is lowered if the company's financial information is not updated yearly.

10. A lower D&B Score is harmful to Dollar Phone and other companies that rely on the ability to obtain credit in the normal course of business.

11. Dollar Phone Corp., in 2007, 2008, and 2009, timely emailed and faxed its financial statements – for 2006, 2007 and 2008 respectively – to D&B.

12. In 2007, for example, Dollar Phone emailed and faxed its 2006 financial information to D&B no less than eights times within a six month period. More specifically, the information was emailed to D&B on April 19, 2007, May 10, 2007, twice on June 25, 2007, September 28, 2007, and October 19, 2007, and was faxed in July and August of 2007.

13. During 2008 and 2009, Dollar Phone sent its 2007 and 2008 financial information to D&B multiple times. More specifically, the financial information was sent to D&B on July 28, 2008, November 25, 2008, December 2008, January 12, 2009, July 28, 2008, June of 2009, and July 1, 2009.

14. Dollar Phone sent its financials to D&B on many other dates as well.

15. However, each time, D&B claimed never to have received the information. D&B then lowered Dollar Phone Corp.'s D&B Score for failure to provide updated financial information.

16. After D&B claimed that it didn't receive the updated financial information from Dollar Phone, D&B then recommended that Dollar Phone purchase Self Monitor to ensure that D&B receives and posts updated financial information and does not lower Dollar Phone's D&B Score.

17. Dollar Phone purchased Self Monitor in July of 2007 and July of 2008 to prevent D&B from falsely claiming that Dollar Phone had not provided updated financial information and to prevent D&B from lowering Dollar Phone's D&B Score on that basis.

18. Upon information and belief D&B engages in a similar tactic against other companies by ignoring financial updates that companies send D&B and thereafter soliciting the sale of Self Monitor and/or other products.

D&B Misleads Dollar Phone to Buy Score Builder Which Is Of No Value to It

19. D&B solicits companies to purchase Score Builder as a way to add trade references to their D&B profile and thereby improve their D&B Score.

20. A telecom reseller such as Dollar Phone has trade relationships with many large vendors that likely already report information to D&B. Sufficient trade references are

4

available to D&B without the need for active companies like Dollar Phone to purchase Score Builder.

21.	D&B nevertheless misleads companies such as Dollar Phone into purchasing Score Builder to add unneeded references to their D&B profiles.

22.	D&B already independently collects trade references from approximately 5000 creditors that regularly report to D&B.

23.	Score Builder was thus of little or no value to Dollar Phone, and is of little or no value to other companies, since many, if not all, of the trade references that can be added to a company's profile already report to D&B.

24.	Furthermore, when D&B solicited Dollar Phone to purchase Score Builder in November of 2007, and in advertisements by D&B on its website, D&B failed to inform Dollar Phone that D&B would only consider as trade references those companies that D&B already monitors. In addition, D&B failed to disclose that Dollar Phone cannot provide as trade references any internationally based companies.

25.	After D&B solicited Dollar Phone to buy Score Builder and failed to disclose the above mentioned facts, Dollar Phone purchased Score Builder in November of 2007 and attempted to add trade references to its D&B profile.

26.	D&B rejected all of these references because they were either internationally based companies or not D&B subscribers.

Dollar Phone Has Purchased $3,000 in Unneeded Services from D&B

27.	From July 2007 through January 2009 Dollar Phone paid D&B approximately $3,000 for Score Builder and Self Monitor.

Dollar Phone's D&B Score is Lowered After It
Refuses to Pay D&B For Services Dollar Phone Did Not Order

28. In May of 2009 D&B sent to Dollar Phone a "purchase order" for Self Monitor.

29. When Dollar Phone called D&B to ask who had ordered the renewal, the D&B agent told Dollar Phone that the renewal was automatic because Dollar Phone's existing Self Monitor term was expiring.

30. Dollar Phone asked why D&B sent the "purchase order" in May for a product never ordered when the expiration of the prior year's Self Monitor subscription was not until July 2009.

31. D&B responded that Dollar Phone should pay the bill in May, but the "renewal" would take effect in July. In fact, the "purchase order" was an unsolicited sale of a product that Dollar Phone never requested.

32. Dollar Phone Corp. refused to pay the purported renewal until the previous term's expiration in July.

33. Upon information and belief, D&B "reported" to itself a payment delinquency relating to Dollar Phone as a result of its refusal to pay for services it did not order.

34. Despite the fact that D&B was billing Dollar Phone for a "purchase order" of services never requested, and despite the fact that payment was not due – even according to D&B – until July 2009, as of June 30, 2009 D&B lowered Dollar Phone's "paydex" score, putting Dollar Phone Corp. in a higher credit risk category.

35. Thus, in response to Dollar Phone's justified refusal to pay for services that Dollar Phone did not order, D&B lowered Dollar Phone Corp.'s credit rating. D&B thereby provided false information regarding Dollar Phone Corp. to subscribers of D&B's

6

services, claiming that Dollar Phone Corp. did not pay its obligations on time and misrepresenting Dollar Phone Corp.'s credit risk profile.

36. Upon information and belief D&B engages in a similar tactic against other companies.

37. Dollar Phone Corp.'s ability to obtain credit was thereby wrongfully impaired.

38. Dollar Phone Corp. and Global Switching, Inc. have always paid all obligations to D&B on time.

## CLASS ACTION ALLEGATIONS

39. This action is brought on behalf of named plaintiffs and as a Class Action pursuant to Rules 23(b) and 23(c) of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or "Class Members":

> **Class A**: Since June 2005 to present, all persons and businesses that were forced, misled, or deceived by D&B into purchasing Self Monitor and/or Score Builder which they did not or should not have been required to buy and/or which were of little or no value to them.
>
> **Class B**: Since June 2005 to present, all persons and businesses in specific states [Arizona, California, Connecticut, Delaware, Florida, Illinois, Massachusetts, Maine, Michigan, Minnesota, Nevada, New Jersey, New York, Vermont, Washington, and West Virginia] with substantially similar statutes[1] (enacted and designed to protect against unfair or deceptive business practices) that were forced, misled, or deceived by D&B into purchasing Self Monitor and/or Score Builder, which they did not or should not have been required to buy and/or which were of little or no value to them.

40. Numerosity: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities

---

[1] *See* N.Y. Gen. Bus. Law § 349(a); Ariz. Rev. Stat. § 44-1522; Cal. Bus. & Prof. Code § 17200 *et seq.*; Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; 815 ILCS § 505/1 *et seq.*; Mass. Gen. L. ch. 93A, § 2; Me. Rev. Stat. Ann. tit. 5 § 207; Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Nev. Rev. Stat. § 598.0903 et seq., § 598.0915(15); N.J.S.A. 56:8-2; Vt. Stat. Ann. tit. 9, § 2453; Wash. Rev. Code § 19.86.010 *et seq.*; and W. Va. Code § 46A-6-104.

7

of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and avers that there are thousands of Class Members.

41. <u>Commonality</u>: Plaintiff and Class Members' claims derive from a common core of salient facts and share many of the same legal claims. There are questions of fact or law common to members of the Class, which predominate over any questions affecting any individual members, including, but not limited to, the following:

a. Whether it is a deceptive business practice when D&B negligently fails to consider information sent by Class Members to D&B in updating a company's information and then forces Class Members to buy Self Monitor to correct such information;

b. Whether it is a deceptive business practice for D&B to solicit and sell Score Builder to Class Members without disclosing to Class Members that they cannot add as trade references any internationally based company;

c. Whether it is a deceptive business practice for D&B to solicit and sell Score Builder to Class Members without disclosing to Class Members that they cannot add as trade references any company that is not a D&B subscriber;

d. Whether D&B engaged in deceptive, unfair or unconscionable acts or practices;

8

Case 1:09-cv-03645-ILG-SMG   Document 9   Filed 11/19/09   Page 9 of 16 PageID #: 82

e. Whether D&B was unjustly enriched through its course of deceptive conduct;

f. Whether Plaintiff and members of the Class have sustained ascertainable losses by reason of D&B's deceptive course of conduct and, if so, the proper measure of those losses;

g. Whether Plaintiff and Class Members, as prescribed by the above listed state statutes against deceptive business practices, have a right to collect damages and/or a refund; and

h. Whether Plaintiff and members of the Class are entitled to injunctive and/or other equitable relief;

42.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of other members of the Class in that Plaintiffs' claims arise from the same course of deceptive conduct by D&B that affects Class Members. Plaintiffs, like other Class Members, were forced by D&B to purchase Self Monitor to remedy D&B's negligent failure to update financial information.  Plaintiffs, like other Class Members, purchased Score Builder and did not receive the full value promised by Defendants.  Plaintiffs and Class Members suffered monetary losses as a result of Defendants' above mentioned course of conduct.

43.  <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class.

9

Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of other Class Members. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class. Plaintiffs' attorneys are experienced in the area of representative and class actions and have successfully represented plaintiffs in numerous such actions.

44. Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over issues that are individual to members of the Class. The proposed Class is sufficiently cohesive to warrant class and representative treatment. Upon information and belief, Defendants have the technology and records which would permit Plaintiffs a plausible class-wide method for proving the case. Certification under Rule 23(b)(3) is also appropriate because a class action is superior to other available methods for the fair and efficient adjudication of this action. Given the small damage amounts per Class Member, the expense of litigating each Class Member's claim individually would be so cost prohibitive as to deny Class Members a viable remedy. Plaintiff envisions no unusual difficulty in the management of this action as a class action.

45. Plaintiff also brings this action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate. In the absence of appropriate injunctive relief, Defendants will continue their unfair and deceptive business practices. Defendants' uniform conduct towards Plaintiffs and the other members of the Class makes certification under Rule 23(b)(2) appropriate.

## FIRST CAUSE OF ACTION
(Violation of N.Y. Gen. Bus. Law §349 and substantially similar statutes of other states that prohibit deceptive business practices)

46. Plaintiffs repeat and reallege the foregoing allegations.

47. This cause of action is asserted by Plaintiffs on behalf of themselves and on behalf of Class B, as defined herein.

48. N.Y. Gen. Bus. Law §349(a) makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

49. D&B engaged in deceptive practices in violation of N.Y Gen. Bus. Law §349 as described above and herein.

50. D&B knew or should have known it was providing to consumers incorrect information about Dollar Phone and other businesses in the Class by falsely posting nonexistent late payments and thereby misrepresenting a company's true credit score and risk profile.

51. D&B was negligent and/or reckless in its methods of gathering information about Dollar Phone and other Class Members. Even though Dollar Phone sent its financial information to D&B on multiple occasions in 2007, 2008, and 2009, D&B routinely failed to update the information and represented to Dollar Phone that it did not receive the information.

52. D&B sought to force businesses such as Dollar Phone to sign up for D&B's Self Monitor service in order to correct D&B's negligent practice of failing to properly update financial information.

53. Upon information and belief D&B engaged in similar conduct with respect to other Class Members.

54. Further, D&B has sold unneeded services to Dollar Phone and other Class Members based upon misrepresentations regarding the utility of Score Builder.

55. Since the original filing of this lawsuit, D&B has ceased selling Score Builder.

56. Since the original filing of this lawsuit, D&B has added a disclosure to its CreditBuilder Plus service. The disclosure reads, "D&B reserves the right to include or exclude certain vendors based on business credit quality standards. D&B also will not contact vendors who already report payment experiences to us on an ongoing basis. Vendors must be in the D&B database with an established, low risk Financial Stress Score and Commercial Credit Score. Examples of vendors who D&B may not contact due to the above include landlords, utilities, credit cards, banks and telecom."

57. D&B's above mentioned wrongful business practices are deceptive and/or misleading in a material way. These deceptive practices have a broad impact on business consumers at large and significantly undercut the level of trust, honesty, and integrity in the marketplace. The consumer public relies on D&B's reports and small business consumers like Dollar Phone and other Class Members rely on the accuracy of such information. Therefore, D&B's behavior has a wide consumer impact.

58. D&B's course of conduct thereby violates the substantially similar unfair and deceptive acts and practices laws of New York and other states, represented by Alternate Class B defined above. *See* N.Y. Gen. Bus. Law § 349(a); Ariz. Rev. Stat. § 44-1522; Cal. Bus. & Prof. Code § 17200 et seq.; Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; 815 ILCS § 505/1 et seq.; Mass. Gen. L.

ch. 93A, § 2; Me. Rev. Stat. Ann. tit. 5 § 207; Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Nev. Rev. Stat. § 598.0903 et seq., § 598.0915(15); N.J.S.A. 56:8-2; Vt. Stat. Ann. tit. 9, § 2453; Wash. Rev. Code § 19.86.010 et seq.; and, W. Va. Code § 46A-6-104.

59. N.Y. Gen. Bus. Law §349(h) provides that any person who has been damaged by reason of any violation of this section may recover his actual damages or fifty dollars, whichever is greater, or both such actions, and that the Court may award reasonable attorneys' fees to a prevailing plaintiff.

60. Dollar Phone and other Class members have been damaged by reason of D&B's violation of N.Y. Gen. Bus. Law §349 and substantially similar statutes of other states. Dollar Phone and the Class are thereby entitled to recover their actual damages plus their reasonable attorneys' fees.

SECOND CAUSE OF ACTION
(Unjust Enrichment)

61. Plaintiffs repeat and reallege the foregoing allegations.

62. This cause of action is asserted by Plaintiffs on behalf of themselves and on behalf of Class A, as defined herein and stated in the alternative to the First Cause of Action.

63. D&B has sold unneeded services to members of the plaintiff Class.

64. If D&B were to exercise due diligence in monitoring Class Members' credit information, it would keep accurate and updated credit ratings without requiring subject companies to purchase the Self Monitor and Score Builder services.

65. Defendants have thus received and retained a benefit conferred by Plaintiffs and Class Members at their expense through their purchase of Defendants' unneeded products and services.

66. Dollar Phone and the plaintiff Class have been damaged in an amount to be determined at trial.

67. Plaintiffs, on behalf of themselves and the Class, are entitled to restitution from D&B and an order for the disgorgement of all profits, benefits, and other compensation obtained by D&B through its wrongful conduct.

THIRD CAUSE OF ACTION
(Libel)

68. Plaintiffs repeat and reallege the foregoing allegations.

69. This cause of action is asserted by Plaintiffs on behalf of themselves and on behalf of Class A, as defined herein.

70. Upon information and belief, for a period of time that begins with June 30 2009, D&B knowingly published false information concerning Dollar Phone by posting onto its website and in its reports – where D&B's subscribers get information regarding Dollar Phone – that Dollar Phone did not timely pay its obligations to D&B. In addition, D&B published false information concerning Dollar Phone by posting a false credit risk profile, one that reflects a credit score lower than what Dollar Phone deserved.

71. Because D&B knew that Dollar Phone's refusal to pay for an unsolicited product did not constitute a late payment, D&B knew the published information to be false, or acted with reckless disregard as to the truth of the information.

72. Upon information and belief D&B has engaged in similar conduct with respect to other members of the Class.

73. From April 2007 through July 2009, D&B knowingly or recklessly failed on multiple occasions to properly update Dollar Phone's financial information, even though Dollar Phone timely sent D&B such information on multiple occasions.

74. From April 2007 through July 2009, upon information and belief, D&B, as a result of its own failure to update Dollar Phone's financial information, knowingly or recklessly published false information concerning Dollar Phone by posting onto its website and in its reports – where D&B's subscribers get information regarding Dollar Phone – a false credit risk profile, one that reflects a credit score lower than what Dollar Phone deserved.

75. Dollar Phone and the Class were damaged by the false information that D&B published and they were forced to purchase unneeded D&B services in order to mitigate damages.

WHEREFORE Dollar Phone, individually and on behalf of the Class, demands judgment for:

1) Damages in the amount of services paid for by Dollar Phone and the plaintiff Class for services wrongfully billed by D&B, plus reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law §349(h) and substantially similar statutes of other states as mentioned above;

2) An injunction requiring D&B to properly collect and report the credit information it sells without charging the Class improper fees for unneeded services;

3) Enjoining D&B from further wrongful sales of its credit reporting services and requiring it to adopt company policies that govern its sales force and the tactics utilized in selling services;

15

4) Granting Dollar Phone and the Class their actual damages on all causes of action including, to the extent permitted by law, costs, disbursements, pre and post judgment interest and reasonable attorneys' fees.

Dated:  November 19, 2009

>BRONSTEIN, GEWIRTZ
> & GROSSMAN, LLC
>
>By:
>   /s/ Peretz Bronstein
>Peretz Bronstein (PB-8628)
>Edward N. Gewirtz (EG-6801)
>60 East 42nd Street, Suite 4600
>New York, NY 10165
>(212) 697-6484
>Attorneys for Plaintiffs