```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3
   -----------------------------------X
4                                      :
   DOLLAR PHONE CORP., et al.,         :   09-CV-3645
5                                      :
                      Plaintiffs,      :
6                                      :
                  v.                   :   January 6, 2010
7                                      :
   DUN & BRADSTREET CORPORATION,       :   225 Cadman Plaza East
8  et al,                             :   Brooklyn, New York
                                       :
9                     Defendants.      :
   -----------------------------------X
10

11   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE DISCOVERY CONFERENCE
                BEFORE THE HONORABLE STEVEN M. GOLD
12                 UNITED STATES MAGISTRATE JUDGE

13
   APPEARANCES:
14

15  For the Plaintiff:        PERETZ BRONSTEIN, ESQ.

16

17

18
   For the Defendant:         JASON HALPER, ESQ.
19

20

21
   Court Transcriber:         SHARI RIEMER
22                            TypeWrite Word Processing Service
                              211 N. Milton Road
23                            Saratoga Springs, New York 12866

24

25


   Proceedings recorded by electronic sound recording,
   transcript produced by transcription service
```

2

1   (Proceedings being at 10:33 a.m.)

2             THE COURT: So this is the case of <u>Dollar Phone v.</u>

3   <u>Dun & Bradstreet</u>, 09-CV-3645.

4             Who's here for Dollar Phone?

5             MR. BRONSTEIN:  I am, Your Honor.  Peretz Bronstein.

6             THE COURT: Mr. Bronstein.

7             MR. BRONSTEIN: Bronstein, Gewirtz & Grossman.

8             THE COURT: Nice to see you. And for Dollar Phone?

9             MR. HALPER:  Jason --

10            THE COURT: Excuse me. For Dun & Bradstreet.

11            MR. HALPER:  For Dun & Bradstreet, Your Honor, Jason

12   Halper from the firm Lowenstein & Sandler.

13            THE COURT: Now, you have had an interesting,

14   although very recently submitted I must say, exchange of

15   correspondence about Dun & Bradstreet's intention to file a

16   Rule 12 motion.

17            MR. HALPER: It's been filed.

18            THE COURT: It's already been filed?

19            MR. HALPER: Yes, it was filed in December.

20            THE COURT: And whether or not discovery should

21   proceed while the motion is pending.

22            MR. HALPER: Correct.

23            THE COURT: I have some questions having read the

24   letters.  Mr. Halper, you assert that if your motion is

25   successful the case cannot proceed in federal court.  Did I

3

1   understand that correctly?

2          MR. HALPER: Correct.  Well, I guess there's two

3   parts to it.  If the claims are dismissed in their entirety

4   obviously the complaint is dismissed.

5          THE COURT: Right.

6          MR. HALPER: The other point we made was that if

7   certain claims are dismissed and the case -- and class

8   certification is not granted on the remaining claims this case

9   cannot proceed in federal court because the only reason we're

10  in federal court is based on a class action allegation. This

11  case was originally filed in state court.  We removed under

12  the Class Action Fairness Act.  As pled currently we believe

13  the $5 million threshold under that act is met. However, if

14  we're only talking about -- for instance, if the libel claim

15  is the only claim that survives we don't think the case can

16  proceed as a class action and therefore the jurisdictional

17  allegations would not --

18         THE COURT: Well, which claims are asserted?

19         MR. HALPER: There's three claims in the amended

20  complaint.  There's a claim for -- under Section 349 of the

21  General Business Law.

22         THE COURT: And that's obviously a state law claim.

23         MR. HALPER: Correct.

24         THE COURT: They're all state law claims.

25         MR. HALPER: They're all state law claims.  There's a

4

1  claim for libel and there's a claim for unjust enrichment.

2         From the defendant's point of view, and I know Mr.

3  Bronstein probably has a different point of view, but from our

4  point of view it's really the first claim, the Section 349

5  claim that is the only reason that this case can even be

6  thought of as a class action.  I've never heard of a class

7  action based on libel or unjust enrichment but I may be wrong.

8         THE COURT: Do you want to tell me a little bit about

9  whether or not you think you have a viable class action claim

10 on these other causes of action?

11        MR. BRONSTEIN: Yes, Your Honor.  First of all, you

12 know there's that old joke about somebody killed his parents

13 and said he's an orphan.

14        THE COURT: Yes.

15        MR. BRONSTEIN: We've sued in state court.  They

16 removed to federal court.  Now he wants to stay discovery

17 because they don't belong in federal court.  So I just would

18 not be equity of that.  I would like the court to take that

19 into account.

20        THE COURT: It happens all the time in that let's

21 assume you've brought a Title VII claim and the defendant

22 thought it was a baseless claim or there was a lack of

23 jurisdiction or it wasn't timely filed because it's a federal

24 question claim there's clear federal jurisdiction and they

25 have a right to ask a federal judge to evaluate its bona

1  fides.  Well, because there's diversity and you've asserted a

2  claim that meets the threshold for diversity or because it's a

3  class action and is therefore removable, excuse me, they have

4  a right to have a federal judge adjudicate the viability of

5  the claim. Right?

6            MR. HALPER: Yes.

7            MR. BRONSTEIN: I understand that they have the right

8  to move to dismiss.  What I'm saying is they want to stay

9  discovery --

10            THE COURT: Right.

11            MR. BRONSTEIN: -- because the case may end up

12  proceeding in state court.

13            THE COURT: Right, right.

14            MR. BRONSTEIN: And discovery will take -- it doesn't

15  matter which court it's in unless they get it dismissed

16  altogether.

17            THE COURT: Well, if they get a dismissal of the

18  Section 349 claim on the merits --

19            MR. BRONSTEIN: Yes.

20            THE COURT:  -- and there is no legitimate basis for

21  a class action for your libel and unjust enrichment claims

22  then the discovery would be limited to the transaction between

23  the plaintiff and Dun & Bradstreet.

24            Now, I suspect if we push Mr. Halper to the limits

25  of what he'd be willing to agree to or a ruling he could live

6

1  with without much protest he'd be willing to proceed to

2  discovery on the claim of the plaintiff as an individual

3  against Dun & Bradstreet.   The expense of burdensome discovery

4  is the class action discovery and Mr. Halper makes two points

5  about that.

6          One, he says I have a very plausible basis for

7  challenging the Section 349 GBL claim and I don't think that

8  the plaintiff could withstand Rule 23 scrutiny on the libel

9  and unjust enrichment claims, and even if the plaintiff could

10  I have a right to have those matters -- there's no right to

11  have those questions addressed in federal -- well, maybe there

12  is.  As long as there's a class action allegation with large

13  damages I suppose the Rule 23 questions on the libel and

14  unjust enrichment claims could be analyzed, but certainly the

15  Section 349 claim shouldn't even be the subject of class

16  discovery and that's the expensive burdensome question.

17          MR. BRONSTEIN:  On the merits Your Honor asked me to

18  respond why I think it would have a class.  I just want to

19  speak about the 349 first.  There's no authoritative

20  authority, authority that's binding on this court that says a

21  business consumer cannot bring a claim under Section 349.

22  This product was advertised widely by Dun & Bradstreet on

23  their small business website with pictures of men and women

24  working out of their bedroom offices, you know, starting their

25  own business, how to build your own credit if you're starting

7

1  your own business.  Judge Weinstein of this court who -- I

2  don't know if a decision of a district judge is binding on

3  this court but it certainly I'm sure -- it's an elder

4  statesman of this courthouse --

5          THE COURT: Without a doubt.

6          MR. BRONSTEIN:  -- has ruled that --

7          THE COURT: That's in the Verizon v. Yellowbook case.

8          MR. BRONSTEIN: Right.

9          THE COURT: But the Verizon v. Yellowbook case, I

10  read it.  I know the case.  It's an approval of a settlement.

11  There was no dispute about the applicability of Section 349

12  put before the court.

13          MR. BRONSTEIN: Okay.

14          THE COURT: And I have not found any case where a

15  business plaintiff successfully invoked Section 349.  There

16  are many cases where businesses who seek to be plaintiffs

17  under 349 get dismissed.

18          MR. BRONSTEIN: Right.

19          THE COURT: I've written some of them.

20          MR. BRONSTEIN: Well, first of all, Judge, they cite

21  a Judge Glasser decision, Veroso I think it's called, where he

22  dismisses a business 349 claim on the grounds that most courts

23  have dismissed them [inaudible].  They say this is a private

24  contractual dispute.  This is the famous case, the NYU case.

25  I don't know -- maybe New York Court of Appeals.

 1              THE COURT: Which you cite in your letter and which

 2    I've looked at.

 3              MR. BRONSTEIN: NYU had a unique negotiated indemnity

 4    agreement.

 5              THE COURT: Insurance contract.

 6              MR. BRONSTEIN: And it was not a widely product sold

 7    to the -- off the shelf to the public and that's the reason

 8    why Judge Glasser for instance dismissed the business claim.

 9              THE COURT: I understand.

10              MR. BRONSTEIN: But Judge Glasser in dicta says the

11    plaintiffs as a business can bring this case and he kind of --

12    he passes over that issue accepting it and then he says but

13    I'm going to dismiss it because it's a private business

14    dispute.  It's not a -- the statute itself, 349, does not say

15    that one needs to be a business to sue under it and they cite

16    a case --

17              THE COURT: One needs to be a consumer to sue under

18    it.

19              MR. BRONSTEIN: One may not be a business consumer.

20              THE COURT: Right.

21              MR. BRONSTEIN: Pardon me for misspeaking.

22              THE COURT: That's okay.

23              MR. BRONSTEIN: They cite a statute, a New York

24    statute that defines a consumer as -- for household goods but

25    that's a statute -- I don't recall the -- which particular

9

1   statute they cited.  It has nothing to do with Section 349,

2   the business corporation law.

3          So the statute itself does not apply this

4   limitation.  There's no Court of Appeals, New York Court of

5   Appeals case applying this limitation and we agree -- we agree

6   with the NYU principle that if it were a private business

7   dispute we could not sue under that statute but this was a

8   credit building product sold for $200.00 or $300.00 over the

9   internet widely, not negotiated.  We actually bought it

10  through a telemarketer.  So we think that we have a 349 claim.

11          The cases I looked at about whether a magistrate or

12  a judge, magistrate judge or district judge should stay

13  discovery pending a motion to dismiss, you have to make a

14  decision -- the court has to decide whether it's likely to be

15  successful, the motion to dismiss or not.  I don't see -- I

16  don't think that they have a slam dunk by any means on this

17  349 issue.

18          But even if they do I don't see how we're not going

19  to be left with two common law claims that are appropriate for

20  a class action and they are as follows.  Unjust enrichment.

21  There's two products we're complaining about.  One is this

22  credit -- self monitor product.  What happened to Dollar Phone

23  is Dun & Bradstreet monitors you and gives you a credit report

24  whether you -- 5,000 companies or 10,000 companies and any

25  company who's monitor has the right to fax in information.

1  You don't have -- if they don't have updated financials on you

2  they lower your credit score.  So they lowered our credit

3  score.  This happened like in '07 and they say okay, fax in or

4  email your financials. We kept doing it and they said oh, we

5  don't get it, I don't know.  But the self monitor then you'll

6  be able to control and make sure your financials.  So Dollar

7  Phone bought the self monitor.  A year later passes by.  Same

8  thing.  End of the year they want the new financials and this

9  time we got a notice from the self monitor that we don't have

10  your financials and they said okay and then we worked on the

11  financials. It happened three years in a row.  Three times in

12  a row they never accepted through fax or email the way they're

13  supposed to updated financials.

14       What this forced us to -- oh, you have to basically

15  buy the self monitor or you don't get your financials updated.

16  I believe this is an unjust enrichment claim.

17       THE COURT: Unless you want to send them certified

18  mail return receipt requested.

19       MR. BRONSTEIN: Well, we have proof that we emailed

20  it to them.

21       THE COURT: What's the good faith basis though for

22  believing that this wasn't a problem between you and Dun &

23  Bradstreet?  What's the good faith basis for believing that

24  this is a systemic thing that Dun & Bradstreet does

25  deliberately which is what would be necessary, right, for

11

1  unjust enrichment?

2          MR. BRONSTEIN: Right.

3          THE COURT: There would have to be some intent. Is

4  there any evidence that in the business community that the

5  Better Business Bureau has brought such a complaint against

6  Dun & Bradstreet or there are news reports of many businesses

7  reporting this difficulty?  Generally before there's a class

8  action in a products case -- if you buy -- I just had a

9  picture tube case in the LCD television.  I guess it's not a

10 picture tube.  It's the lamp.  If your lamp fails you don't

11 bring a class action on a products liability claim saying

12 these lamps are defective when there are thousands of lamps

13 failing around the country.  Now you have a good faith basis

14 to say there's a Rule 23 claim here.

15         You've got a client who had a problem getting its

16 financial information communicated to Dun & Bradstreet

17 assuming the allegations of your complaint to be accurate.  Is

18 there any basis to think that this is a systemic problem?

19         MR. BRONSTEIN: Well, first of all, it happened three

20 years in a row.

21         THE COURT: To you, to Dollar Phones.  Excuse me.

22         MR. BRONSTEIN: To Dollar Phone.  And that clearly

23 based on that -- and just by the tenor of the -- when you

24 speak to the people they say A should have done it and B

25 should have done it. You just get the runaround at customer

1   service.  We have the impression that there was -- we smell

2   that some shenanigans, that there's no system in place there.

3   This would be our claim.  They do not have a proper practice

4   and procedure in place to insure that people's financial

5   information is updated and then they lower your credit score

6   and it forces people to buy the -- I don't -- so we have

7   alleged -- that's the basis of our belief that we're entitled

8   to file a complaint and -- the court is entitled to either --

9           THE COURT: I don't take any disrespect or not from

10  the way you phrase your argument. Don't hesitate.

11          MR. BRONSTEIN: No.  We're entitled to file it based

12  on that.  I think we have sufficient Rule 11 to have made the

13  allegation and my belief is -- I'm going to get in discovery

14  and I want to take discovery into exactly how this works.  Do

15  they have people sitting there manning the email and the fax

16  to update the financials, and that's the basis of our

17  allegation.

18          Well, let me go on to -- Your Honor understands it.

19          THE COURT: I think I do.

20          MR. BRONSTEIN: So whatever Your Honor thinks about

21  it that's your choice but at least I've communicated it to

22  you.

23          THE COURT: You have.

24          MR. BRONSTEIN: Now the breach of contract. There was

25  another problem we had with them.

13

1          THE COURT: Which is not pled but would be --

2          MR. BRONSTEIN: It is pled.

3          THE COURT: I'm sorry.

4          MR. BRONSTEIN: The factual problem -- the

5   allegations are pled.  I thought it was in there.  I

6   inadvertently noticed that we don't have the breach of

7   contract.  We have another product they sold us.  That's

8   called the Score Builder and that's again advertised on the

9   internet and they tell you that this -- when our score went

10  down because their financials they said you know what, buy

11  the -- you want to get your score back up buy this Score

12  Builder.  Score Builder they say will take over a six-week

13  period.  You can send us twenty references and if you have

14  more references it will build up your credit.  We pay let's

15  say $300.00 for that.

16          Dollar Phone had many credit references who are from

17  like big carriers, it's a phone company.  Dollar Phone buys

18  minutes from Verizon and they'll say well, Verizon is a

19  company that we already -- we already have Verizon because

20  Verizon reports those automatically.  So that -- we don't

21  accept that as a new credit reference.  Then we had a bunch of

22  international carriers that we buy minutes from and pay.  We

23  can't take international carriers because they're not rated by

24  Dun & Bradstreet.  We will only accept a credit reference for

25  companies rated by Dun & Bradstreet.  So what happens is that

1  any large U.S. entity or any reports to Dun & Bradstreet.  So

2  you get no marginal benefit by giving a credit reference from

3  Verizon.  Anyone that's like off the beaten trail like Telecom

4  Italia they won't accept the reference because they don't rate

5  Telecom Italia.

6         THE COURT: There are no businesses in America that

7  you might have credit relationships with that fall into the

8  category where you could add a reference under --

9         MR. BRONSTEIN: I'm not saying there are zero but

10  they sold us the product and there's no disclosure on the

11  website of these limitations.

12         THE COURT: I see.

13         MR. BRONSTEIN: So the product that -- clearly the

14  universe of acceptable credit references is much narrower than

15  they advertise and that means the product is less valuable.

16  So what they're selling for 300 bucks assuming it was -- if

17  the product would have accepted all credit references for 300

18  bucks it's something -- worth something less.  So we'll put on

19  an expert and say what they're selling for 300 bucks -- it was

20  worth 300 bucks with -- if they would take Telecom Italia it's

21  only worth $200.00.  It's just not as viable a product and

22  therefore the difference between the value of what they

23  deliver and what they promised are contractual damages.

24  Everyone in the country who bought the Score Builder has the

25  same expectancy damages, contractual damages.

1          I just want to note one -- after I filed this

2    complaint, although I'm used to it already because plaintiffs'

3    lawyers are like the lowest breed and it's just a strike suit.

4    They did change the website and they added the disclaimer.

5    Now they added the disclaimers.  It says on the bottom we'll

6    only take Dun & Bradstreet rated companies.  Therefore,

7    many --

8          THE COURT: You've already done the public service

9    you were born to do.

10          MR. BRONSTEIN: Under Rule 23 I'm already entitled to

11   a fee.  So under 23(b)(2).

12          So I don't see how -- why -- just take the Score

13   Monitor -- Your Honor asked a good question about the self

14   monitor, meaning what's my basis saying this is systemic.

15   Let's take that one out.  Just the breach of contract on the

16   Score Builder that they delivered a product, the product was

17   not as advertised.  I don't see how that can get dismissed and

18   I don't see why it's not appropriate for a class action.  You

19   only need 100 people to satisfy numerosity.  I'm not Milberg

20   Weiss or -- but I think I can represent a class and --

21          THE COURT: It may be a narrower class than the one

22   you describe but maybe a class of people who have credit

23   relationships with companies that are excluded by the Dun &

24   Bradstreet policy that's undisclosed.  I don't know that

25   you're an adequate and appropriate representative for somebody

1   who bought the product and the only credit references they

2   sought to add were accepted.  That person got everything they

3   paid for; right?

4             MR. BRONSTEIN: That's in terms of -- I don't know if

5   that's necessarily true because --

6             THE COURT: You buy it for a period of time or do you

7   pay one [inaudible] perpetuity?

8             MR. BRONSTEIN: You buy it for a period of time but

9   even on the -- whoever bought this, the potential -- the

10  potentiality of the product is lesser.  It's like saying --

11  you know what it's like, Your Honor.  I paid for a -- my kid

12  plays the piano.  He has a speaker, a 60 watt speaker.

13            THE COURT: Yes.

14            MR. BRONSTEIN: And it's really a 30 watt speaker.

15  What you're saying is well, your son never turns up his piano

16  above 10 watts.

17            THE COURT: Right.

18            MR. BRONSTEIN: So who cares.  He got all the watts

19  he needed but it was more expensive -- he played for 60 watts.

20  They sold a 60 watt product for --

21            THE COURT: My point I guess is different which is

22  that -- we're close but the question is does he belong in the

23  same class with someone who went to a performance with his --

24            MR. BRONSTEIN: I hear you.

25            THE COURT:  --  supposedly 60 watt amp.  It was only

17

1  30 watts and nobody could hear him and they walked out in the

2  middle of the performance and he didn't get paid as a result.

3  He may not be an appropriate representative for the

4  individuals who only practice in their room and never turn up

5  the volume.

6          MR. BRONSTEIN: Let's assume for a moment that's

7  true.

8          THE COURT: It doesn't --

9          MR. BRONSTEIN: We still have a class.  We need 100

10 people.

11         THE COURT: You're right.  The problem is is the

12 class definition, not availability of a class --

13         MR. BRONSTEIN: That's [inaudible] securities class

14 action which I didn't bring myself but I work with lawyers

15 that do.  So you have like bondholders, stockholders, but all

16 the time -- and sometimes they do break it up into subclasses.

17         THE COURT: Each with a representative --

18         MR. BRONSTEIN: Not necessarily though.  I mean --

19         THE COURT: We're predicting the future.  We're

20 looking down the road and speculating as we do but I

21 appreciate the zeal and articulation of your argument.

22         MR. BRONSTEIN: Thank you, Your Honor.

23         THE COURT: Thank you.

24         MR. HALPER: May I respond?

25         THE COURT: Sure.

18

1        MR. HALPER: First of all --

2                  [Pause in proceedings.]

3        MR. HALPER: The discussion we've just been having

4   regarding a potential breach of contract claim, let's just be

5   clear for the record there is no breach of contract claim in

6   the complaint.  It's already been amended once.  It remains to

7   be seen whether that will be amended again.

8        THE COURT:  It will be.

9        MR. BRONSTEIN: On that particular point, Mr. Halper

10  makes a good point.  First the motion [inaudible] focused on

11  the absent of class allegations.  So I amend them.  I add

12  them. Now his next one is focused on these issues.  He's

13  helping me prove my complaint which I appreciate.

14        MR. HALPER: Anything I can do to help him out.

15        Also, all of the arguments that Mr. Bronstein has

16  been making I think demonstrate that his complaint here is

17  really individual harm to Dollar Phone and I think Your Honor

18  asked him some good questions about well, how does this affect

19  other customers of Dun & Bradstreet.  And that's important

20  because a) if this is only a harm suffered by Dollar Phone

21  then the Section 349 claim fails as a matter of law, and also

22  this goes to the scope of discovery especially while the

23  motion to dismiss is pending.  Mr. Bronstein indicated he

24  wants to get into policies of Dun & Bradstreet and how these

25  products are sold and who they're sold to and presumably this

19

1  will get into if we're talking about other customers whether

2  their credit scores were lowered and a whole host of other

3  issues.

4          I think at this stage of the game since there is a

5  motion to dismiss pending, since we believe that class

6  certification is definitely going to be challenged and based

7  on his definition of the class we believe it's going to be

8  difficult for him to get the class certified.  We believe it

9  would be a waste of time and money to proceed in a wide net of

10 discovery here.  If we're just limiting discovery to Dollar

11 Phone my comeback to that is the claims between Dollar Phone

12 and Dun & Bradstreet, his own complaint in paragraph 27 says

13 that his damages there are $3,000.00.  So if this is a dispute

14 only between Dun & Bradstreet and Dollar Phone I can guarantee

15 you there will be no discovery.  Dun & Bradstreet is not going

16 to litigate a case for $3,000.00 or $5,000.00.

17         Another point is we filed a motion to dismiss at the

18 beginning of this case after we had moved.  We actually asked

19 Mr. Bronstein if he planned on amending because we obviously

20 didn't want to get into wasteful motion practice if there were

21 just going to be amended complaints.  He said at the time that

22 he was comfortable with the complaint, he was going to stand

23 on the complaint.  We filed a motion. He saw some

24 deficiencies.  He corrected it.  He filed an amended complaint

25 that forced us to file another motion. Now we hear that

1   there's going to be yet another amended complaint.  So from my

2   client's perspective we're spending a lot of money already and

3   we haven't even completed motion practice and I think we would

4   like the court to consider that in determining whether for the

5   next couple of months any type of discovery should proceed let

6   alone class-wide discovery.

7          THE COURT: You've made your motion.  Has opposition

8   been filed yet?

9          MR. HALPER: No.  Opposition, I believe, is currently

10  due January 20th.  Mr. Bronstein told me before the conference

11  he's going away.  He may need an extension. Whatever time he

12  needs is fine with us but even with an extension I think this

13  will be -- the briefing will be completed in February with an

14  extension probably towards the middle or end of the month.

15         THE COURT: Let's assume for argument's sake that a

16  stay is granted.  What can you do to reassure me that if the

17  stay is lifted a good firm litigation hold is in place not

18  only with respect to the plaintiff's claims but with respect

19  to the punitive class claims?

20         MR. HALPER: I can tell you that in-house counsel for

21  Dun & Bradstreet has sent litigation hold notices to the

22  persons responsible for gathering this information.  So I have

23  seen that notice so I can represent to the court that the

24  employees of the company are on notice that this litigation

25  has been filed.  No documents are being destroyed.

1    THE COURT: I'm thinking about electronic documents.

2    MR. HALPER: Yes, electronic documents are being

3  preserved although to be honest I'm not sure how much

4  electronic discovery we're talking about. If we're just

5  talking about emails between Dun & Bradstreet and Dollar Phone

6  there aren't that many.  I've seen them all.  There's only a

7  handful.  If we're talking about credit reports for not only

8  Dollar Phone but other customers, those records are

9  accessible.  I can't represent how far back they go but I know

10  they're accessible.

11    THE COURT: I'm thinking about different things.  I'm

12  thinking about first of all the advertising or website

13  information at different points in time for the two products

14  that are at issue in the lawsuit and I'm thinking about the

15  purchase information and who the purchaser is and where

16  they're located for the punitive class members.

17    In other words, let's assume that despite your best

18  efforts some element of this class, some element of this claim

19  eeks through the Rule 23 needle and it comes time to notice a

20  class and it's 18 months from now, will we have lost the

21  identity of class members who could otherwise be noticed

22  because of the passage of time?

23    MR. HALPER: I don't think that should be an issue.

24  The company has transaction records, they have billing

25  records.  Again, I think it would depend on the scope of the

1  claim.  If the class is going to be defined as every single

2  customer who purchased these two products, whether in New York

3  or elsewhere.  I think they can be identified just by looking

4  at the company's records.

5         THE COURT: Well, all right.  I understand what

6  you're saying. Did you want to add something?  I saw you lean

7  forward.  I didn't know if it was to type something or to say

8  something.

9         MR. BRONSTEIN: No.  Well, first of all, Your Honor,

10 as I anticipated they changed the website and I -- I hope I

11 didn't [inaudible] try to grab -- I had a picture of what it

12 looked like when I filed this but I would like to see the

13 internal communications about changing the website and also if

14 this case goes forward, which I hope it will, it's going to be

15 about the internal procedures about how they man the receipt

16 of the financials.  It's about internal systemic

17 communications.  So --

18        THE COURT: Okay.

19        MR. BRONSTEIN:  -- it will probably help the case if

20 I'll be able to show that they destroyed information that they

21 certainly shouldn't.

22        THE COURT: He wants to amend to add a breach of

23 contract claim.  Do I infer from your remarks that you're

24 opposed to the amendment?

25        MR. HALPER: Yes.  At this point in our brief we

23

1  actually have a section saying that one amendment is enough.

2          THE COURT: I've seen seventh amended complaints.

3  I've got a solo practitioner here representing an individual

4  business who is undertaking to represent a class.  I'm not

5  trying to pressure you into anything but what I'm going to do

6  if you do oppose is say that the time to oppose your motion is

7  also the time to cross-move for leave to amend.  So the breach

8  of contract claim will be before -- I want that at least

9  articulated before Judge Glasser so he knows that -- and you

10 know that if you knock out the other claims but he believes

11 the contract claim is viable he's going to grant your motion,

12 he's going to grant his motion and we're going to be back here

13 on the breach of contract claim.

14          But you're entitled to oppose it and it just gives

15 him two bites at the apple because he'll be cross-moving for

16 leave to amend and then he gets the last brief in as he

17 replies on his cross-motion whereas if you consent to leave to

18 amend he'll put in his opposition to dismiss and you'll be

19 able to reply to the opposition on your dismissal motion and

20 you'll have the last word.  So by the practical effect of

21 declining to consent is to give plaintiff the last word when

22 you have it but that's fine.  I'm sure Mr. Bronstein won't

23 protest too vehemently.

24          MR. BRONSTEIN: Actually the only other allegation I

25 intended [inaudible] is on the fact -- it's not in the present

24

1    complaint.  I'm sorry.

2              THE COURT: That's okay.  We got you.

3              MR. BRONSTEIN: The fact that the products we bought

4    were on this -- they have a separate small business whole

5    company and I think that goes to the 349.  So I'm just going

6    to add the fact that it was a small business and a breach of

7    contract.

8              THE COURT: I'm going to grant the stay application.

9    I'm going to grant the stay application because of several

10   reasons.  First of all, my review of the case law leads me to

11   the conclusion that Dun & Bradstreet's argument, particularly

12   with respect to the 349 claim, is a strong one.  I'm not sure

13   it will prevail but I believe it's very strong.  I recently

14   had occasion to write about it. I issued a memorandum and

15   order on March 12, 2009 in Docket Number 01-CV-6242 which is a

16   publicly filed memorandum and order.  It was on a motion for

17   reconsideration of a sua sponte dismissal of a Section 349

18   claim and I dealt with the question of whether or not an

19   individual who was a pilot with an airline and was fired as a

20   result of a positive drug test result by a laboratory could

21   bring a Section 349 claim against the laboratory because of

22   its failure to follow allegedly appropriate procedures.

23              I dismissed the claim and in doing so I wrote as

24   follows: Plaintiffs contend that Section 349 claims have

25   survived dismissal motions even when parties bringing them are

25

1   not individual consumers.  However, the facts of the case

2   primarily relied upon by the plaintiffs which is Oswego

3   Laborers v. Marine Midland Bank at 85 N.Y.2d 20 are not

4   analogous to those here.  The plaintiffs in Oswego were not

5   customers but two not for profit associations administering

6   union benefit funds but the transactions at issue were ones in

7   which the plaintiffs were acting as and were treated by

8   defendant as consumers.  Thus, in deciding that Section 349

9   claims could proceed the court held -- you know what.  I'm

10  reading from the wrong section of the opinion, not the one

11  that I -- let me read you a different section of the opinion

12  at Page 2.  I apologize.

13           As the Consumer Protection Act's name indicates, its

14  purpose is to protect the consuming public.  Generally claims

15  under the statute are available to an individual consumer who

16  falls victim to misrepresentations made by a seller of

17  consumer good through false or misleading advertising.  That's

18  the Small v. Lorillard Tobacco case that I think you probably

19  both are familiar with, 1999 New York Court of Appeals

20  decision.  Courts considering the scope of the statute have

21  repeatedly held that a consumer for purposes of Section 349 is

22  one who purchases goods and services for personal family or

23  household use.  That's Exxon Mobile v. Advanced Information

24  Engineering Services, Southern District of New York 2004

25  reported at 328 F.Supp.2d 443.

1          Thus, "New York courts have generally found that
2    business to business transactions do not give rise to Section
3    349 claims particularly when the disputed transaction does not
4    have ramifications for the public at large," and that's the
5    Exxon Mobile case as well.
6          The meaning of this proposition is twofold said the
7    Exxon Mobile court.  Section 349 liability attaches primarily
8    where a party's misrepresentations are boilerplate and have
9    the potential to be repeated.  Second, allegedly deceptive
10   acts that occur between relatively sophisticated entities with
11   equal bargaining power do not give rise to 349 liability.
12   Large businesses are not the small time individual consumers
13   Section 349 was intended to protect.  Contracts to provide
14   commodities that are available only to businesses do not fall
15   within the parameters of Section 349.
16         So with that kind of case law out there and the
17   absence of case law showing that businesses, even small ones,
18   can successfully invoke a consumer protection statute I think
19   the defendant has the better of the argument.
20         Now, while I agree that it may be that some of these
21   other claims will survive or that it's likely that it will and
22   that they may be the subject of Rule 23 discovery thereafter,
23   the scope of the Rule 23 discovery is going to be very
24   different particularly because the existence of a state
25   statutory claim is going to raise questions about whether the

1   class should be limited to New York State or not that might

2   not arise with common law claims that have elements that are

3   common around the country, and I don't see any urgency in this

4   case.  This is not a plaintiff who is suffering under an

5   impairment or who is owed the kind of money that will make a

6   difference in its ability to survive or thrive or not.  The

7   filing of a punitive class action complaint tolls the statute

8   of limitations and having taken all of these considerations

9   into a fact and in the interest of an efficient resolution of

10  the claim I think the stay is appropriately sought and I'm

11  granting it.

12          However, I will direct that any motion for leave to

13  amend be included in the opposition papers which will give the

14  plaintiff an opportunity for reply.  You'll stipulate to a

15  date for the reply papers unless between now and say a week

16  from now the defendant consents to the filing of the amended

17  pleading.  And number two, I want something filed by the

18  defendant within a week confirming what --

19          I took note, Mr. Halper, that you expressed your

20  thought that a firm litigation hold was in place.  I'd like

21  some confirmation of it in writing and part of the record of

22  the proceeding.  So you can do that by filing a letter and I

23  would like it to include some reflection of the communication

24  you've had with Dun & Bradstreet's -- I'm going to call them

25  IT department.  I don't know what they specifically call it

28

1  because the problem that I've confronted from time to time is

2  when the software that's used by a company is changed during

3  the life of a litigation and the data that proceeds the

4  software change becomes very expensive to retrieve, so I'd

5  like advance notice of that so we -- if that should occur

6  while the motion practice is pending or if it survives motion

7  practice while the class action discovery is pending we can be

8  sure that it's -- that the information we need is preserved in

9  a manner that we can access without a lot of expense and a

10  cost shifting motion from you.

11           MR. HALPER: Very good.  Thank you, Your Honor.

12           THE COURT: See you when the motion is decided.

13           MR. BRONSTEIN: Thank you, Your Honor.

14           THE COURT: Take care.

15                        *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

29

1     I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5                             _____

6                               Shari Riemer

7 Dated:  January 11, 2010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25