UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DOLLAR PHONE CORP. and GLOBAL
SWITCHING, INC., individually and on behalf
of all those similarly situated,

                    Plaintiffs,

  - against -
                                              REPORT
                                              AND RECOMMENDATION
                                              09-CV-3645 (ILG) (SMG)

DUN & BRADSTREET CORPORATION and
DUN & BRADSTREET, INC.,

                    Defendants.
-------------------------------------------------------------X
*GOLD, S., U.S.M.J.*:

## Introduction

Plaintiffs Dollar Phone Corp. and its parent company Global Switching, Inc., ("plaintiffs" or "Dollar Phone"), New York corporations, bring this diversity action against Delaware corporations Dun & Bradstreet Corporation and Dun & Bradstreet, Inc., ("defendants" or "D&B"), alleging that D&B engaged in deceptive business practices in violation of New York General Business Law § 349. Dollar Phone also asserts causes of action for libel and unjust enrichment. Plaintiffs bring their claims on behalf of themselves and on behalf of a putative class.[1]

D&B now moves to dismiss each of the claims in plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dollar Phone opposes the motion and also cross moves for leave to file a second amended complaint to add a claim for breach of contract.

---

[1] Subject matter jurisdiction is predicated on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Pursuant to CAFA, plaintiffs have alleged that the amount in controversy exceeds $5 million. Am. Compl. ¶ 5, Docket Entry 9.

Defendants oppose plaintiffs' motion to amend on the ground that such amendment would be futile. The Honorable I. Leo Glasser referred this motion to me for a report and recommendation. For the reasons stated below, I respectfully recommend that defendants' motion to dismiss the first amended complaint be granted in part and denied in part. In addition, I recommend that plaintiffs' motion to amend be granted.

## Background

The facts set forth below are derived from Dollar Phone's first amended complaint.[2] I assume these facts to be true for purposes of deciding this motion.

D&B maintains credit reports on small businesses, including Dollar Phone. Am. Compl. ¶ 8, Docket Entry 9. D&B's credit reports award each company a "score." D&B lowers a company's score if the company does not update its financial information annually. *Id*. ¶ 9. A lower D&B score harms Dollar Phone and similarly situated companies that need to obtain credit in order to operate their businesses. *Id*. ¶ 10.

In 2007, 2008 and 2009, Dollar Phone timely emailed and faxed its financial statements for those respective years to D&B. *Id*. ¶ 11. For example, in 2007, Dollar Phone emailed its documentation to D&B on April 19, May 10, twice on June 25, September 28 and October 18, and faxed the documents in July and August. *Id*. ¶ 12. In 2008 and 2009, Dollar Phone also faxed and emailed its financial statements to D&B on multiple dates. *Id*. ¶¶ 13-14. Each time, however, D&B claimed that it did not receive the information. *Id*. ¶ 15. D&B then lowered Dollar Phone's score for failure to provide updated financial information. *Id*.

---

[2] Dollar Phone states that the facts relevant to its proposed breach of contract claim are included in its first amended complaint. *See* Pl. Opp. Mem. 29, Docket Entry 19.

After D&B claimed that it did not receive Dollar Phone's financial information, D&B recommended that Dollar Phone purchase "Self Monitor," a product that D&B represented would help ensure the receipt and posting of plaintiffs' updated financial information. *Id*. ¶ 16. Dollar Phone purchased Self Monitor, apparently on an annual basis, in July of 2007 and July of 2008. *Id*. ¶ 17.

In May of 2009, D&B sent Dollar Phone a purchase order for Self Monitor. *Id*. ¶ 28. Dollar Phone had not requested the product at that time, but was informed by D&B that Dollar Phone's Self Monitor subscription was on automatic renewal. *Id*. ¶¶ 29, 31. D&B requested payment for the product in May, even though Dollar Phone's subscription was not due to expire until July. *Id*. ¶¶ 30-31. Dollar Phone refused to pay for the product before the term expired in July. *Id*. ¶ 32. Upon information and belief, D&B "'reported' to itself a payment delinquency relating to Dollar Phone as a result of its refusal to pay . . . ." *Id*. ¶ 33. As of June 30, 2009, D&B lowered Dollar Phone's "paydex" score, placing Dollar Phone in a higher credit risk category and thereby impairing its ability to obtain credit. *Id*. ¶¶ 34, 37.

In November 2007, D&B solicited Dollar Phone to buy another one of its products, "Score Builder," that allows companies to add trade references to their D&B profile and thereby improve their credit score. *Id*. ¶¶ 19, 24. D&B independently collects trade references from approximately 5,000 creditors that regularly report to D&B. *Id*. ¶ 22. When D&B solicited Dollar Phone to purchase Score Builder, D&B failed to inform Dollar Phone that it would only consider as trade references those companies that D&B already monitors. *Id*. ¶ 24. In addition, D&B failed to disclose that Dollar Phone could not use Score Builder to add any companies based outside of the United States as trade references. *Id*. When Dollar Phone attempted to add

3

trade references to its profile, D&B rejected all of them because they were either internationally-based companies or because they were not D&B subscribers. *Id*. ¶ 26. From July 2007 through January 2009, Dollar Phone paid D&B approximately $3,000 for Self Monitor and Score Builder. *Id*. ¶ 27.

## Discussion

1. <u>Standards of Review</u>

Defendants seek to dismiss each of the claims in plaintiffs' first amended complaint pursuant to Rule 12(b)(6). Plaintiffs oppose defendants' motion and also seek leave to file a second amended complaint adding a claim for breach of contract pursuant to Rule 15(a)(2). Defendants oppose plaintiffs' motion on the ground that the proposed new claim would be subject to dismissal for failure to state a claim.

    a.    *Rule 12(b)(6)*

A court deciding a motion to dismiss must accept all factual allegations as true and draw all inferences in favor of the non-moving party. *See Intelligent Digital Systems, LLC v. Visual Mgmt. Systems, Inc*., 683 F. Supp. 2d 278, 283 (E.D.N.Y. 2010). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal v. Ashcroft*, 129 S. Ct. 1937, 1949-50 (2009). Although a plaintiff is not required to plead "'detailed factual allegations,'. . . 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 1949 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570)). A claim has sufficient "facial plausibility" to survive a Rule 12(b)(6) motion "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

b. *Rule 15(a)(2)*

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend a pleading] when justice so requires." A district court has discretion to deny leave to amend in appropriate circumstances, though, including where the amendment would be "futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). An amendment is considered futile if, for example, it could not defeat a motion to dismiss pursuant to Rule 12(b)(6). *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Thus, whether considered in the context of a motion to dismiss or opposition to a motion for leave to amend, the viability of a claim is evaluated by the same legal standard.

2. <u>New York General Business Law § 349</u>

Plaintiffs' first amended complaint asserts a cause of action pursuant to New York's General Business Law Section 349. This statute is part of New York's Consumer Protection Act, N.Y. Gen. Bus. Law art. 22-A, and provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. GEN. BUS. LAW § 349(a). To state a *prima facie* case under the statute, "'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). D&B contends that Dollar Phone's

5

claim fails with respect to the first two elements. For the reasons discussed below, I find that Dollar Phone has failed to allege consumer-oriented conduct and therefore recommend that defendants' motion to dismiss plaintiffs' Section 349 claim be granted.

As the Consumer Protection Act's name indicates, its purpose is to protect the consuming public. "Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 55 (1999). Courts have repeatedly held that "a consumer, for § 349 purposes, is one who purchase[s] goods and services for personal, family or household use." *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y.2004) (internal quotation marks omitted). *See also Cruz v. Nynex Info. Res.*, 703 N.Y.S.2d 103, 106 (1st Dep't 2000). Thus, New York courts have generally found that "when the activity complained of involves the sale of commodities to business entities only, such that it does not directly impact consumers, section 349 is inapplicable." *Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, 2010 WL 2075921, at *7 (E.D.N.Y. May 21, 2010). *See also Exxonmobil Inter-America, Inc.*, 328 F. Supp. 2d at 449 ("Contracts to provide commodities that are available only to businesses do not fall within the parameters of § 349"); *Citipostal, Inc. v. Unistar Leasing*, 724 N.Y.S.2d 555, 558 (4th Dep't 2001) ("The acts complained of are limited to business rather than consumer leases, and the conduct complained of cannot carry over to consumer transactions."); *Cruz*, 703 N.Y.S.2d at 107 (holding that, because the complained of conduct "by definition, [is] a commodity available to businesses only, and plaintiffs fail to show how [such conduct] might either directly or potentially affect consumers, such conduct does not fall within the parameters of the statute").

6

Although the scope of the Act is generally limited to claims by consumers, "a business may bring a § 349 claim if it is harmed by consumer-oriented conduct." *Spirit Locker, Inc.*, 696 F. Supp. 2d at 302. "A plaintiff establishes consumer-oriented conduct by showing that 'the acts or practices have a broader impact on consumers at large' . . . *or* that they 'potentially affect similarly situated consumers.'" *Id*. (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995)). Accordingly, to bring a claim under Section 349, a business-plaintiff must demonstrate that "defendant's deceptive conduct is, at least to some extent, directed at non-business consumers." *Id*. at 304. On that basis, the court in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, found that pension fund plaintiffs could bring a Section 349 claim alleging that the defendant bank misrepresented its savings account policies. Although the pension fund was not a typical consumer as defined by Section 349, the bank had dealt with the "plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts." 85 N.Y.2d at 26. The bank's conduct therefore qualified as consumer-oriented under Section 349. *Id*. at 26-27.

In contrast, the transactions between D&B and Dollar Phone, both businesses, did not involve consumer-oriented conduct. Dollar Phone's complaints are premised on D&B's sale of Self Monitor and Score Builder, both of which are specifically marketed to and designed for companies that appear in D&B's reports. By their very nature, these are not products for "personal, family or household use" and the deceptive practices alleged by plaintiffs are not directed at non-business consumers.

Plaintiffs contend that small business owners may qualify as consumers under Section

7

349. In support, plaintiffs rely primarily upon *Verizon Directories Corporation v. Yellow Book USA, Inc.*, where the court found that "[s]mall business owners, as purchasers and potential purchasers of advertising in yellow pages directories, qualify as 'consumers' within the meaning of the statute." 338 F. Supp. 2d 422, 428 (E.D.N.Y. 2004). The quoted language, however, does not support plaintiffs' position when viewed in the context of the entire case. First, the court's decision approved an *uncontested* class action settlement agreement. Thus, there was no dispute about the applicability of Section 349 before the court. Second, the court not only found that small businesses were affected by the defendant's misrepresentations, but also that "some members of the *general public* [were] probably denied in at least some cases a more extensive listing of businesses in the yellow pages directories they used." *Id*. at 429 (emphasis added). Plaintiffs in this case do not allege, nor is there any basis upon which to infer, that the general public was harmed by D&B's conduct. In fact, Dollar Phone concedes that the other entities allegedly harmed by D&B's conduct were "other small businesses [that] purchase[d] products from D&B." Pl. Opp. Mem. 21, Docket Entry 19. Accordingly, *Verizon Directories Corp*. is inapplicable to the present case.[3]

Although Dollar Phone cites some additional authority for the proposition that a small business may be considered a consumer under Section 349, the overwhelming majority of cases hold otherwise. The court's discussion in *Spirit Locker, Inc. v. EVO Direct, LLC* is particularly relevant here. Plaintiff in *Spirit Locker* was a small business owner that retained defendant EVO

---

[3] To the extent *Verizon Directories Corp*. stands for the proposition that a business may be a consumer for purposes of Section 349, at least one subsequent decision has declined to follow it. *See Spirit Locker, Inc.*, 696 F. Supp. 2d at n.6 (citing *Verizon Directories Corp*. and disagreeing with its analysis).

to provide credit card processing services. EVO provided its processing services solely to businesses. The court recognized that, although some early case law seemed to support the notion that small businesses were protected by Section 349, "[s]ubsequent appellate authority . . . excludes businesses from the definition of 'consumer,' stating unequivocally that a consumer is an individual who 'purchases goods and services for personal, family or household use.'" *Spirit Locker*, 696 F. Supp. 2d at 303 (quoting *Sheth v. New York Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)).

Plaintiffs also argue that a small business like Dollar Phone *should* be treated like a consumer because of the inequality in bargaining power between Dollar Phone and a large company like D&B. Similar arguments have been rejected by other courts. For example, in *Cruz v. NYNEX Information Resources*, the court noted that, even though the transactions were "modest in value," "repeated regularly with numerous parties," "rel[ied] on a form contract," and "involve[d] parties with a large disparity in economic power and sophistication," plaintiffs' claim failed under the General Business Law because the alleged misrepresentations involved "a commodity available to businesses only" and were thus not consumer-oriented. 703 N.Y.S.2d at 107 (internal citations omitted). *See also Spirit Locker*, 696 F. Supp. 2d at 303 (citing *Cruz* and rejecting plaintiff's argument that an inequality in bargaining power renders a small business a consumer under Section 349). Accordingly, any inequality in bargaining power between Dollar Phone and D&B is insufficient to render D&B's conduct susceptible to a Section 349 claim.

Because D&B's markets Self Monitor and Score Builder only to small businesses, and because they are products that only a business would use, the deceptive practices alleged by Dollar Phone do not qualify as consumer-oriented conduct. I therefore respectfully recommend

9

that defendants' motion to dismiss plaintiffs' Section 349 claim be granted.

    3.    Libel

To state a claim for libel under New York law, a plaintiff must allege: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Group, Ltd.*, 2010 WL 2710615, at *3 (S.D.N.Y. July 8, 2010) (internal quotation marks omitted). "While a complaint need not contain the exact words that constitute [the alleged libel], the plaintiffs must allege facts that provide an adequate identification of the purported communication, and an indication of who made the communication, when it was made and to whom it was communicated." *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003) (internal quotation marks omitted). Allegations of actual damages are not required when the statement at issue constitutes libel per se. *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000). As one pertinent example, "'[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed.'" *Id.* at 180 (quoting *Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663 (1981)).

Dollar Phone alleges that the following statements constitute libel per se: 1) D&B's publication of a false report that Dollar Phone submitted a late payment; and 2) D&B's publication of a false credit risk profile that reflects a lower credit score than Dollar Phone deserved. Plaintiffs contend that these statement constitute libel per se because when "D&B, 'the world's leading source of credit information and other financial and related information

10

about businesses,' reports late payments and/or downgrades a business' credit rating, this tends to injure a corporation in its trade or business." Pl. Opp. Mem. 12 (quoting Def. Mem. 1) (internal quotation marks omitted). *See also* Am. Compl. ¶ 37 (alleging that Dollar Phone's ability to obtain credit was impaired by the statements described above).

Defendants contend that Dollar Phone's libel claim should be dismissed on the ground that it does not meet the requirements of New York Civil Practice Law and Rules 3016(a). Rule 3016(a) requires that, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint . . . ." In this case, plaintiffs' amended complaint does not set forth "the particular words" alleged to constitute libel. *See* Am. Compl. ¶ 70. The omission is not fatal, however, because "a defamation action brought in federal court is governed by the more liberal pleading standard of [Federal Rule of Civil Procedure] 8, . . . pursuant to which a complaint alleging defamation 'is not required to contain the defamatory statements in *haec verba* as long as it affords defendant 'sufficient notice of the communications complained of to enable him to defend himself[.]'" *Silverman v. City of New York*, 2001 WL 218943, at *8 (E.D.N.Y. Feb. 2, 2001) (internal citations omitted); *see also Bostic v. City of Binghamton*, 2006 WL 2927145, at *7 (W.D.N.Y. Oct. 11, 2006).

Dollar Phone has stated a claim for libel sufficient to satisfy the requirements of Rule 8. Plaintiffs allege that, beginning in June 30, 2009, D&B knowingly published on its website and in its reports to subscribers false information indicating that Dollar Phone "did not timely pay its obligations to D&B." *See, e.g.,* Am. Compl. ¶¶ 28-35, 70-71. In addition, plaintiffs allege that from April 2007 to July 2009, D&B knowingly or recklessly failed to update Dollar Phone's financial information, and subsequently published on its website and in its reports to subscribers

11

a false credit risk profile that reflected a lower score than the one Dollar Phone deserved. *Id*. ¶¶ 11-15, 73-74. These allegations are sufficient to notify D&B of the purported communications, and when and to whom the communications were made. Moreover, as indicated above, plaintiffs' allegations constitute libel per se because a false report of an untimely payment and a false low credit score "impugns the basic integrity or creditworthiness of a business." *Celle*, 209 F.3d at 180 (internal quotation marks omitted). Thus, plaintiffs are not required to plead facts showing that they sustained actual damages. For all of these reasons, I recommend that defendants' motion to dismiss plaintiffs' libel claim be denied.

4. <u>Unjust Enrichment</u>

D&B also seeks to dismiss plaintiffs' claim for unjust enrichment. To establish a claim for unjust enrichment, Dollar Phone must show "1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation marks omitted). Dollar Phone alleges that D&B was unjustly enriched because, by falsely claiming it did not receive Dollar Phone's updated financial information and lowering Dollar Phone's credit score, D&B essentially forced Dollar Phone to subscribe to Self Monitor.

D&B contends that Dollar Phone's claim for unjust enrichment is barred because Dollar Phone has a contractual relationship with D&B. D&B correctly notes that New York law "precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." *Beth Israel Med. Ctr.*, 448 F.3d at 587. However, "[c]ourts construe this question of overlapping subject matter narrowly." *Fernbach, LLC v. Capital & Guarantee, Inc.*, 2009 WL 2474691, at

12

*3 (S.D.N.Y. Aug. 12, 2009). *See also Spirit Locker*, 696 F. Supp. 2d at 305 (noting that defendant's argument "that an unjust enrichment claim is never cognizable where a valid contract exists between the parties [] is too broadly stated," and rejecting a challenge to a claim of unjust enrichment despite such a contract because the plaintiff's claim was "not covered by" the contract's terms).

D&B argues that Dollar Phone's unjust enrichment claim is precluded by the Self Monitor contract. However, the subject matter of Dollar Phone's complaint is not covered by that contract. Dollar Phone does not allege that D&B breached any obligation with respect to its Self Monitor service, but rather, that D&B inequitably forced Dollar Phone to purchase Self Monitor by failing to update Dollar Phone's financial information in the first instance. Based upon the facts alleged in the complaint, there does not appear to have been any contractual relationship between D&B and Dollar Phone prior to Dollar Phone's purchase of Self Monitor, when this alleged misconduct took place. Thus, plaintiffs' claim that it paid defendants for a service based upon D&B's deceptive practice of failing to update financial information is sufficient to state a claim for unjust enrichment. *See Bildstein v. MasterCard Int'l, Inc.*, 2005 WL 1324972, at *4 (S.D.N.Y. 2005) (finding that plaintiff stated a claim for unjust enrichment based upon allegations that the defendant collected excessive fees from "unknowing cardholders pursuant to a manipulative practice of nondisclosure"). Accordingly, I recommend that defendants' motion to dismiss Dollar Phone's unjust enrichment claim be denied.

5.  <u>Breach of Contract</u>

Dollar Phone seeks to amend its complaint to add a claim for breach of contract. D&B opposes the amendment on the ground that the new claim would be subject to dismissal for

failure to state a claim. Under New York law, a plaintiff asserting a claim for breach of contract must allege: 1) the existence of an agreement; 2) adequate performance of the contract by the plaintiff; 3) breach by the defendant; and 4) damages. *Merrick Gables Ass'n, Inc. v. Town of Hempstead,* 691 F. Supp. 2d 355, 363 (E.D.N.Y. 2010). Plaintiffs contend that D&B breached its Score Builder contract with Dollar Phone "by not providing . . . the full value promised for the Score Builder service." Second Am. Compl. ¶ 70, Docket Entry 21-1. More specifically, plaintiffs allege that D&B breached its agreement with Dollar Phone by failing to disclose that, as part of the Score Builder service, D&B would not accept trade references from non-D&B subscribers or from internationally-based companies. Plaintiffs have attached a page from D&B's website offering Score Builder for sale to their proposed new pleading. Second Am. Compl. Ex. A. D&B's offer is thus "a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

D&B contends that Dollar Phone's claim must be dismissed because plaintiffs have failed to identify any term of the agreement that was breached. This argument should be rejected. New York courts have held that a binding contract may be formed when an internet user accepts an offer made on a seller's web site. *See, e.g., Hines v. Overstock.Com. Inc.*, 2010 WL 22030, at *2 (2d Cir. June 3, 2010) (citing cases); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007). Plaintiff alleges that it purchased Score Builder after viewing the offering on D&B's website. Second Am. Compl. ¶¶ 20, 26. In that offering, D&B describes Score Builder as "[a] service that adds up to six new payment references of your choice" and promises to inform the purchaser when references are added and to provide the purchaser "with the opportunity to submit additional references online until you reach your limit." *Id*. Ex. A. There

is no indication in the offering that only domestic companies that are D&B subscribers may serve as "references of [the buyer's] choice." Accordingly, plaintiff has identified a contractual term and alleged that it was breached by D&B. I therefore recommend that plaintiffs' motion for leave to file a second amended complaint be granted.

## Conclusion

For the reasons set forth above, I respectfully recommend that D&B's motion to dismiss Dollar Phone's claim under Section 349 be granted with prejudice and that D&B's motion to dismiss Dollar Phone's claims for libel and unjust enrichment be denied. I further recommend that Dollar Phone's motion to amend its complaint to add a claim for breach of contract be granted.

Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before September 20, 2010. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

/s
Steven M. Gold
United States Magistrate Judge

September 2, 2010
Brooklyn, New York