

Jason E. Halper
Member of the Firm
Tel  973 597 6144
Fax  973 597 6145
jhalper@lowenstein.com

November 23, 2012

**VIA ECF**

The Honorable I. Leo Glasser, U.S.D.J.
United States District Court
225 Cadman Plaza East
Chambers Room #921 South
Brooklyn, New York 11201

Re:   Dollar Phone Corp., *et al.* v. Dun & Bradstreet Corp., *et al.*
      Civil Action No. 09-3645 (ILG) (SMG)

Dear Judge Glasser:

We represent Defendants Dun & Bradstreet Corp. and Dun & Bradstreet, Inc. (jointly, "D&B"). While we are loathe to submit additional letters in this matter, we feel compelled to briefly respond to Plaintiffs' November 14th letter to Your Honor (*Dkt. #101*).

Despite Your Honor's admonition to Plaintiffs' counsel at the November 13th oral argument about sending additional letters and making additional arguments, Plaintiffs have submitted yet another letter to Your Honor advancing yet another new legal theory. This time Plaintiffs claim that D&B somehow "violated the covenant of good faith and fair dealing." Of course, Plaintiffs have never before made that claim – not in their original complaint, their three subsequent amendments, nor in the briefing on the class certification and summary judgment motions.

The only claims left in this case are Plaintiffs' claims for breach of contract and unjust enrichment related to their purchases of D&B's "Score Builder" product. In their November 14th letter, Plaintiffs argue that D&B committed to "accept 'up to six trade references,'" and that such a commitment was "unqualified." That is untrue. The January 27, 2009 "Order Confirmation" e-mail relied on by Plaintiffs, which was sent to Plaintiffs after they purchased Score Builder over the phone, was not an unqualified commitment by D&B to accept any and all trade references submitted by Plaintiffs. Instead, the e-mail merely stated that Plaintiffs could submit up to six trade references to D&B, which D&B would "attempt to convert into payment experiences" – and that only "verified experiences" would be added to Plaintiffs' credit file. *Bronstein Decl.* (Dkt. #71), Ex. 31. That language did not require D&B to blindly accept any and all trade references submitted by Plaintiffs. Indeed, such a requirement would be absurd, as it would render meaningless D&B's anti-risk and anti-fraud protections for its business credit ratings and would allow customers like Plaintiffs to potentially game their credit scores. As such, D&B not breach any alleged contract terms in the "Order Confirmation" e-mail.

Hon. I. Leo Glasser, U.S.D.J.                                                                November 23, 2012
Page 2

The e-mail also reminded Plaintiffs that they could call or e-mail D&B's Client Services Team if they had any questions about how the product worked or what types of trade references could be converted into payment experiences (even though Plaintiffs had purchased Score Builder many times over the years). Plaintiffs' counsel conceded at the oral argument that Plaintiffs never contacted the D&B Client Services Team or otherwise asked any questions.

Plaintiffs' November 14th letter also makes reference to Judge Gold's denial of D&B's motion to dismiss Plaintiffs' breach of contract claim. Of course, the standard on a motion to dismiss is quite different than a motion for summary judgment. More importantly, Judge Gold's September 2, 2010 Report and Recommendation addressed Plaintiffs' theory that their contract claim was based on an "offer" on D&B's website – a theory that Plaintiffs have since abandoned. On the motion to dismiss, Judge Gold relied on Plaintiffs' allegation that they had "purchased Score Builder *after viewing the offering on D&B's website*." Dkt. #25 (at 14) (emphasis added). That allegation was subsequently proven false through discovery – as discovery showed that Plaintiffs had never even seen the Score Builder webpage prior to any of their purchases of that product (or at any time, for that matter). The record showed that Plaintiffs repeatedly purchased the Score Builder product exclusively over the phone through oral conversations with D&B sales representatives, and Plaintiffs never once saw or reviewed D&B's Score Builder webpage at any time prior to their purchases. *Halper Decl.* (Dkt. #69), Ex. B (Del Cielo Tr. 97:4-100:4). Plaintiffs therefore abandoned their original "webpage" contract theory.

In short, Plaintiffs have amended their complaint three times, and they have tried a variety of different theories in an attempt to keep this litigation alive. But despite their efforts, their rhetoric, and their continuing letter writing campaign to Your Honor, Plaintiffs cannot point to a single contract term that was breached by D&B. The time has finally come for this case to be put to rest. We therefore respectfully submit that D&B's motion for summary judgment should be granted. And we again thank the Court for its attention to this matter.

Respectfully submitted,


/s/  Jason E. Halper

16765/38

cc:    Hon. Steven M. Gold, U.S.M.J. (via ECF)
       Peretz Bronstein, Esq. (via ECF)